UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

TAMON EDWARDS,

<table>
<tr><td></td><td>Plaintiff,</td><td><u>COMPLAINT</u></td></tr>
<tr><td>-against-</td><td></td><td>21 CV 1670</td></tr>
</table>

COUNTY OF NASSAU, GREGORY BERNHARDT,
BASIL GOMEZ, MICHAEL MAZZARA, DAVID
O'CONNOR, and MICHELLE THOMAS,

**JURY TRIAL DEMANDED**

Defendants.
------------------------------------------------------------------------X

Plaintiff Tamon Edwards, by his attorneys, Law Office of Gregory P. Mouton, Jr., LLC,

respectfully alleges:

## NATURE OF THE ACTION

1.     This is an action to recover money damages arising out of the violation of Mr.

Edwards' rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth,

Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and

1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

5.     Mr. Edwards demands a trial by jury in this action.

## PARTIES

6.     Plaintiff Tamon Edwards is a resident of the County of Queens, State of New York.

7.     Defendant County of Nassau (hereinafter, "Nassau County") is a public corporation organized under the laws of the State of New York.

8.     Defendant Nassau County operates the Nassau County Police Department ("NCPD"), a department or agency of Defendant Nassau County.

9.     The NCPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.    At all times relevant herein, Defendant Detective Gregory Bernhardt ("Bernhardt") was an officer, employee, and/or agent of Defendant Nassau County.

11.    At all times relevant herein, Defendant Bernhardt was acting within the scope of his employment with Defendant Nassau County.

12.    At all times relevant herein, Defendant Bernhardt was acting under color of state law.

13.    Defendant Bernhardt is sued in his individual and official capacities.

14.    At all times relevant herein, Defendant Detective Basil Gomez ("Gomez") was an officer, employee, and/or agent of Defendant Nassau County.

15.    At all times relevant herein, Defendant Gomez was acting within the scope of his employment with Defendant Nassau County.

16.    At all times relevant herein, Defendant Gomez was acting under color of state law.

17.    Defendant Gomez is sued in his individual and official capacities.

18.    At all times relevant herein, Defendant Detective Michael Mazzara ("Mazzara") was an officer, employee, and/or agent of Defendant Nassau County.

19.     At all times relevant herein, Defendant Mazzara was acting within the scope of his employment with Defendant Nassau County.

20.     At all times relevant herein, Defendant Mazzara was acting under color of state law.

21.     Defendant Mazzara is sued in his individual and official capacities.

22.     At all times relevant herein, Defendant David O'Connor ("O'Connor") was an officer, employee, and/or agent of Defendant Nassau County.

23.     At all times relevant herein, Defendant O'Connor was acting within the scope of his employment with Defendant Nassau County.

24.     At all times relevant herein, Defendant O'Connor was acting under color of state law.

25.     Defendant O'Connor is sued in his individual and official capacities.

26.     At all times relevant herein, Defendant Michelle Thomas ("Thomas") was an officer, employee, and/or agent of Defendant Nassau County.

27.     At all times relevant herein, Defendant Thomas was acting within the scope of her employment with Defendant Nassau County.

28.     At all times relevant herein, Defendant Thomas was acting under color of state law.

29.     Defendant Thomas is sued in his individual and official capacities.

## STATEMENT OF FACTS

30.    In May 2017, Mr. Edwards was working for Delta Ground Services at John F. Kennedy International Airport. Mr. Edwards is a bodybuilder and fitness enthusiast.

31.    During the course of his employment, Mr. Edwards became friends with his co-worker, Darren Gopaul.

32.    At Gopaul's request, Mr. Edwards also began physical fitness and weight-loss training Gopaul. Gopaul's desire to get into better shape was spurred by his interest in dating Keyonna Condison, then a student at C.W. Post.

33.    Gopaul began dating Condison. Gopaul then invited Mr. Edwards to hang out with him and Condison at Condison's dorm because Condison's friend, Elena Wilson, would also be there.

34.    Mr. Edwards and Wilson hit it off and began dating. Within three weeks they had three dates before Wilson cut off the relationship and blocked Mr. Edwards from contacting her on her phone.

35.    Mr. Edwards attempted to contact Wilson on another number to ask why she had blocked him, but did not receive a response. Edwards did not contact Wilson again.

36.    On September 27, 2017, Gopaul texted Mr. Edwards and told him, in reference to Wilson, that he was going to "bring this thot down… I'm about to spam her phone… [w]ith so much fake number[.]"

37.    Mr. Edwards replied, "Oh god she gonna think it's me[.]"

38.    On September 28, 2017, Gopaul texted Mr. Edwards to state that he was "with Elena rite now[.]"

39.     Gopaul sent more texts to Mr. Edwards stating, "I ain't lying… I told you… I'm destroying her[.]"

40.     He again texted Mr. Edwards stating, "I say we kidnap her," to which Mr. Edwards replied with a GIF that said "Screw You," and a text that stated "[What the fuck] would that do[?]"

41.     On September 30, 2017, Gopaul sent a text to Mr. Edwards asking about a reply email from an expected email from a co-worker.  When Mr. Edwards confirmed that he had received the email, Gopaul sent a text stating that he had sent the initial email using Condison's email account, demonstrating that he had access to Condison's email account.

42.     On January 26, 2018, Gopaul sent texts to Mr. Edwards stating that "Elena's… [b]lamed me and you… [f]or fake texting [her and Condison]… I wanna shoot this botch son[.]"

43.     Mr. Edwards replied that he wasn't texting her so he did not care and that Wilson could "kick rocks".

44.     Gopaul further stated that "[t]hey threatening to call cops on us… I wanna slap her down son[.]"

45.     Mr. Edwards stated "I ain't texing her… [s]he blocked on my phone… [i]f she does they gonna do a trace of the number and find it ain't me[.]"

46. Mr. Gopaul then sent text messages stating:

I'm telling u we need a dump her body

In the lake

And call it a day

I know there door room codes

…

Yo

I cud end Elena and keyonna if I wanted too

But they threatening to call cops

Which is sad

…

I cud ruin eleana especially

I got her LIU account

…

I can drop all her classes and make her have to pay the 26k Tuition instead of financial aid

That's how bad it can get

47.     On March 9, 2019, Keyonna Condison appeared at the C.W. Post Campus of Long Island University Department of Public Safety ("LIUDPS") and gave the following statement:

> I met Tayemon Edwards through my [ex-]boyfriend, Darren [G]opaul around May 2017.  Taemon + a friend of mine, Eleaina Willson [b]riefly dated.  She stopped talking to him and around late June he decided to take vengeance upon me, my ex[-]boyfriend, and anyone else in my circle he could reach.  He has been sending threatening/malicious text messages to my ex, spam texting me from several different numbers, hacking into my T-mobil account, impersonating me, and amongst many other things, he was stalking me, following me on and off campus in his car.  Most recently, it has come to my attention that I have been withdrawn from all of my classes and I have reason to believe that it is him that has done it.

48.     Notably, in this statement, Ms. Condison states that she has "reason to believe" that Mr. Edwards was behind all of these actions.  However, among other things, she fails to allege (1) why she believes Mr. Edwards was associated with the phone numbers from which the text messages were sent; (2) why she believes Mr. Edwards was behind the hacking of her T-Mobile account; (3) why she believes Mr. Edwards was the person impersonating her; (4) the make, model, color, or other characteristics of the vehicle Mr. Edwards allegedly stalked her in; (5) how she was able to identify Mr. Edwards' alleged vehicle; (6) if she ever saw Mr. Edwards' vehicle prior to the alleged stalking episodes; (7) where Mr. Edwards had alleged stalked her at;  (8) if she visually identified Mr. Edwards as the alleged driver of the vehicle; (9) the dates and times of these alleged stalking episodes; (10) that Mr. Edwards was the person that withdrew her from all of her classes; and (11) how Mr. Edwards had access to her accounts.

49.     The statement fails to provide any information to lead a reasonable person to believe that Ms. Condison had any knowledge that would identify the person taking these actions against her as Mr. Edwards.

50. On March 19, 2019 at approximately 2:15 p.m., Keyonna Condison appeared at the

Old Brookville Police Department and gave the following statement to officers:

> over the past several months beginning in August of 2017, I have
> received phone calls and text messages [f]rom several different
> phone numbers harassing me. These messages have been sent to me
> both directly and indirectly through my friends and boyfriend. I
> believe the person responsible is Tayemon Edwards. My boyfriend
> and I had set this individual up with a friend of mine in May of 2017.
> When the situation did not work out I began receiving these
> messages to my phone shortly after. These text message statements
> included "Now I'm going to make yuh really feel the agony of losing
> everythin" I also recently found out that my T-Mobile acct was
> hacked on 3/18/18, when an individual attempted to impersonate me
> and hack my phone to [d]eactivate the acct. I did not give anyone
> permission to use my acct. I would like this person arrested for
> aggravated harassment… At this time I would also like to add that
> as of March 5th I have been withdrawn [f]rom all of my 2018 Spring
> classes, which I did not give anyone permission or authority to
> withdraw me [f]rom.

51. This statement is notably different from her statement to the LIUDPS in that, in this

statement, she does not directly state that she knows that Mr. Edwards was behind the actions

alleged, but, rather, only that she "believe[s]" that the person behind them is Mr. Edwards.

52. Glaringly, the statement also omits any mention of Mr. Edwards allegedly stalking

Condison.

53. Ms. Condison again fails to allege, among other things, (1) why she believes Mr.

Edwards was associated with the phone numbers from which the text messages were sent, (2) why

she believes Mr. Edwards was behind the hacking of her T-Mobile account, (3) why she believes

Mr. Edwards was the person impersonating her, (4) that Mr. Edwards was the person that withdrew

her from all of her classes, and (5) how Mr. Edwards had access to her accounts.

54.    The statement fails to provide any information to lead a reasonable person to believe that Ms. Condison had any knowledge that would identify the person taking these actions against her as Mr. Edwards.

55.    Upon information and belief, on April 9, 2018, Wilson received the following text message from an unknown number:

> Wait till I see u or key ima gunna put a bullet in ya heads on some real shit.  I know ur schedule.  Got class early huh.  I'm tired of this bich [Keyonna].  She made it game ove for u two.  Told me it was u who made up the whole idea of playin me.  Now its clip 4 u cuz she said that.  It's u, Daren, [Keyonna], & whoever else I decide to clip.  Soon come.  If u dont reply I got ur answer that this is true wat she said

56.    On April 9, 2018, Eleana Wilson appeared at LIUDPS and gave the following statement:

> I have recently been receiving threatening text messages from an individual who I used to associate with.  I've been told that a bullet will be put in my head the next time he sees me at work, which means he has been stalking me at my new job (secrets) bar & lounge.  I have not seen this man (Tamon Edwards) since May of 2017 and am just now receiving threatening messages about my life and how my school account is going to be hacked by the end of the week if I don't respond.  Keyonna Condison has received threats for the past three months.  To the point where she had to move to another building on campus.

57.    This statement clearly leaves out what would be revealed by Wilson's later statements, namely that the messages she purports are from Mr. Edwards were sent from various phone numbers not associated with Mr. Edwards, and at no point did the person sending the text messages identify themselves as Mr. Edwards.

58.     On April 10, 2018, at approximately 1:15 p.m., members of the Old Brookville Police Department appeared at the LIUDPS where Elena Wilson gave the following statement:

> I… am present… to report a threatening text message. On April 9th 2018 at about 8:35 p.m. I received a text message from the phone number (347) 974-6152 threatening to put a bullet in my head at 'Secrets' which is a club in Queens. I also received text messages from this number threatening to drop my college classes. These messages case me annoyance and alarm and place me in fear for my safety. I believe that these messages are coming from a friend of a friend Tamon Edwards from Queens… I request an arrest be made for sending these messages.

59.     Upon information and belief, on or about April 10, 2018, the individual defendants received information about the foregoing allegations, including receiving copies of the foregoing statements made by Condison and Wilson.

60.     Upon information and belief, the individual defendants upon reviewing the foregoing information, knew that the allegations did not support probable cause to arrest Mr. Edwards. The individual defendants conspired to massage Wilson and Condison's statements to make it appear that they knew that Mr. Edwards was the person behind the foregoing actions. The individual defendants conspired to obtain further statements from Wilson and Condison that the individual defendants would write, thereby creating false evidence against Mr. Edwards.

61.     On April 10, 2018, at approximately 11:55 p.m., Keyonna Condison appeared at

the NCPD and the following statement was written by Defendant Bernhardt:

> [On January 28, 2018,] at about 8 PM I, Keyonna E. Condison, was driving in my zip car that I rented thru C W Post College in the parking lot of Shah's Halal Food Restaurant, located at 285 S. Broadway, #5 store, Hicksville, New York, after I got something to eat and was preparing to drive back to my dorm room at W.W. Post. The zip care that I rented was a silver Ford automobile. Anyway, as I was halfway backed out of my parking stall trying to leave the parking lot, a light colored car sped up from out of nowhere and almost crashed into my car in order to perpendicularly block me into my parking stall. The car didn't move for almost a minute and I was already afraid for my safety so I honked in hopes that the car would move but it didn't, so I looked to see who was driving the car and I saw that it was Tamon Edwards. I know Tamon Edwards because I met him thru my boyfriend at the time, Darren Gopaul. They were friends so we all hung out once or twice and I saw him and we spoke several other times as well. The first time I met him was at the end of April 2017 when we all hung out for the night. Anyway, after about another half of a minute or so, he finally sped off. I was very fearful for my safety and my life once that I saw that it was Tamon because between November 17, 2017 and January 28, 2018, I had received three text messages threatening to ruin my life and break up my relationship with Darren, and Darren had told me that when I went on a cruise vacation w/ my family in August of 2017 Tamon was repeatedly telling him that I was cheating on him, and that I was no good and that he should leave me, so I was already keen to the fact that Tamon didn't want his friend, and my boyfriend at the time, Darren, to keep dating me. Then, beginning on January 30, 2018 and April 10, 2018 I received approximately one hundred and fifty text messages that I know were from Tamon Edwards because he made numerous references about my friend Eleaina Wilson and wanting an apology from her and I, and that if we [apologize] that he would stop texting us, hacking into my email accounts and my cell phone account w/ T-Mobile, which I had to change my telephone number twice due to his threatening messages. I am the one who set up Eleaina Wilson and Tamon Edwards in early May of 2017. They dated for a short time before Eleaina broke up with Tamon, and Darren said that he took the breakup hard, so I know it has been Tamon Edwards sending me these numerous text messages and I am very annoyed, alarmed, and very fearful for my physical safety.

I did not give Tamon Edwards permission or authority to threaten my physical safety in his vehicle or to harass, annoy, and threaten me and put in fear for my physical safety by sending at least one hundred and fifty text messages to me and further, if caught I want him arrested. Detective Bernhardt has written this statement for me and I have read it and it is the truth. I want to add that today April 10, 2018 at 1:50 pm he sent me a text message that said "Ima put a bullet in yuh head. soon come. Let me catch u outside Brookville." and I am now very afraid for my life.

62.    Notably, the statement (1) makes no mention of the fact that the alleged text messages were sent from unknown/anonymous phone numbers, (2) makes no mention of the allegations relating to the hacking of her school account to drop her classes, (3) suddenly alleges that Condison "know[s]" that Mr. Edwards is behind the actions alleged in the statement, and (4) now alleges that Ms. Condison visually saw Mr. Edwards behind the wheel of the vehicle stalking her on January 28, 2018.

63.    On April 11, 2018, at approximately 12:53 a.m., Eleana Wilson appeared at the NCPD and the following statement was written by Defendant Thomas, who wrote:

I met this guy Tamon Edwards through a friend from school Keyonna Condison who was dating Darren at the time. They both decided to hook me up to go on a date with Tamon Edewards. I went of a few dates with him it was nothing sexual, I thought he was nice but I wasn't attracted to him. I told Keyonna and Darren that I wasn't interested and they encouraged me to continue seeing him and use not use him for material things and to get cheap flights I told them I couldn't do it I feel bad, but one day I was hanging out with Keyonna and she was telling me to use Tamon to get something to eat so I reached out to him and asked him to get me some pizza which he did. Soon after I blocked him from my phone and social media. After that I didn't hear from him this happened around May of 2017. Then 2 months ago I found out from Keyonna that Tamon was stalking and threatening her. On March 15, 2018 I received a a text from (305) 946-1622. It said "Hey you busy?" I texted "Who's this" "Tell ur little friend that I don't want to fuck her thot ass n to stop tellin me n trey." I replied "Who is my little friend" he replied "also I made her who she is" I replied "How you made her? Who you talking about?" he said "No that what she said to us about you

lml." I replied "what she said" he replied "I want an apology" "So u don't wanna answer meh" I know were u live bitch". I showed Keyonna these messages and she told me it was from Tamon Edwards. At that time I did not think anything of it… April 9th around 8:35… messages from a (347) 974-6152 which said "When I see u at secrets… Im putting a bullet in toh head feels meh? Better hop I don't see you" I replied "who is this" He replied "u played me before don't u remember Riggs 215" Riggs 215 is the dorm numbers at school. Then he text "why did u do it?" "If u don't respond I'll drop ur classes before the weeks end like I did to the light skin dyke & keke, one by one" "keke has a bigh mouth & doesn't know when to shup up. It's cuase of her doing this now". By Keke he is referring to Keyonna. I immediately made a police report because I was in fear for my safety. Then on April 10th, 2018 at 2:05 am I received another text from a (516) 953-4040 which stated "Wait till I see u or key ima gunna put a bullet in ya heads on some real shit. I know ur schedule. Got class early huh. I'm tired of this bich key. She made it game over for you. Told me it was u who made up the whole idea of plain me. Now its clip 4 u cuz she said that. It's u, Daren, Key & whoever else I decide to clip. Soon come if you don't reply, I got ur answer that this true wat she said." I then notified public safety and made another police report because I am in fear for my safety. I ~~believed~~ know that these text messages are from Tamon Edwards because of the way he's saying in the text and I saw similar text messages that… sent to Keyonna. I am in fear for my safety and I want him arrested. I am giving this statement to Detective Thomas who wrote it for me and it is the truth.

64.     This statement evidenced the fact that Wilson only believed, without an actual basis, that the text messages were from Mr. Edwards.

65.     Upon information and belief, in an effort to portray Wilson's statement as imparting direct knowledge that the anonymous messages were from Mr. Edwards, Defendant Thomas struck out the word "believed" and replaced with the word "know" so that Wilson's statement then read, "I ~~believed~~ know that these text messages are from Tamon Edwards[.]"

66.     The individual defendants knew that, without these statements, there would be no probable cause of arresting Mr. Edwards.

67. On April 11, 2018, at approximately 2:00 p.m., Defendants Mazzara and Gomez drove to Mr. Edwards' home in Queens, New York, and placed him under arrest.

68. Mr. Edwards' arrest was without probable cause.

69. Mr. Edwards was searched at the time of his arrest.

70. Upon being transported to the precinct, Mr. Edwards executed a "Search of Cell Phone Consent" which gave Defendants the ability to download and access the entire contents of his cell phone.

71. The Defendants did, in fact, review and download the contents of his cell phone and reviewed its contents.

72. Upon performing such a review, the Defendants knew that the only phone number associated with Mr. Edwards' phone was (718) 593-1727.

73. Defendants did not find any apps on Mr. Edwards' phone that would allow him to text or call from a different number.

74. Defendants did find evidence that clearly showed that Gopaul was the person sending the anonymous texts, was hacking the various accounts, and was the person stalking Condison.

75.    Among other things, the individual defendants viewed the following:

a.    Gopaul's September 27, 2017 text message in which he states, in reference to Wilson, that he was going to "bring this thot down… I'm about to spam her phone… [w]ith so much fake number[.]"

b.    Gopaul's September 28, 2017, text in which he states, in reference to Wilson, "I told you… I'm destroying her" and "I say we kidnap her".

c.    Gopaul's September 30, 2017, text message in which he acknowledges that he has access to and uses Condison's email account.

d.    Gopaul's January 26, 2018, text messages stating:

   i.    "I'm telling u we need a dump her body… [i]n the lake…[a]nd call it a day"

   ii.   "I know there door room codes"

   iii.  "I cud end Elena and keyonna if I wanted too"

   iv.   "I cud ruin elena especially"

   v.    "I got [Elena's] LIU account"

   vi.   "I can drop all [of Elena's] classes and make her have to pay the 26k Tuition instead of financial aid… [t]hat's how bad it can get"

76.    Mr. Edwards' cell phone was confiscated as evidence by the individual defendants.

77.    Mr. Edwards was fingerprinted at the precinct by the individual defendants.

78.    The individual defendants also informed Mr. Edwards that they had recovered a camera from outside of the dorm at LIU.  They told Mr. Edwards that they would find his prints on the camera.

79.     Upon information and belief, the individual defendants ran Mr. Edwards' fingerprints against those found on the camera and found that Mr. Edwards' fingerprints were not on the camera.

80.     The individual defendants spoke with the Nassau County District Attorneys' Office, individually and collectively lying to the Nassau County District Attorney's Office that Mr. Edwards had violated New York Penal Law §§ 120.45(1) (stalking in the 4th degree) and 240.30(1)(a) (aggravated harassment in the 2nd degree).

81.     Based on these fabricated allegations, the Nassau County District Attorney's Office forwarded to Defendant Bernhardt two District Court Informations.

82.     Both informations were reviewed and then signed by Defendant Bernhardt.

83.     When reviewing and signing the informations, Defendant Bernhardt knew the allegations contained in them to be false.

84.     The executed informations were then forwarded by Defendant Bernhardt to the Nassau County District Attorney's Office.

85.     Legal process was issued against Mr. Edwards, and Mr. Edwards was subsequently arraigned.

86.     At arraignment, Mr. Edwards was required to post bail of $1,500.00.

87.     During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the Nassau County District Attorney's Office, *inter alia*, the foregoing false District Court Informations, arrest reports, complaint reports, domestic incident reports, and witness/victim statements.

88.     The individual defendants also withheld exculpatory evidence from the Nassau County District Attorney's Office, *inter alia*, the text messages from Gopaul; the true statements of Wilson and Condison; Mr. Edwards' cell phone; and the fact that they had recovered a camera outside of the dorm that did not have Mr. Edwards' fingerprints.

89.     During the course of the prosecution, Mr. Edwards produced evidence that, on January 28, 2018, at 8:00 p.m. he was at work the time that he was alleged to have stalked Condison in a vehicle.   This directly contradicted the statement Defendant Bernhardt had written for Condison which alleged that Condison visually identified Mr. Edwards behind the wheel of a vehicle allegedly stalking her.

90.     The prosecutor also received copies of the text messages from Gopaul that clearly established he was the person behind the texting of Condison and Wilson, had the access codes to their door rooms, had access to their accounts, was threatening to drop Wilson's classes, and was seeking to destroy Condison and Wilson.

91.     Upon information and belief, after receiving this information, the Nassau County District Attorney's Office contacted Condison who admitted that she had never observed Mr. Edwards on January 28, 2018; did not know that it was, in fact Mr. Edwards who had sent her text messages and hacked into her accounts; and that it was Defendant Bernhardt who had drafted those allegations and had her sign it so that Mr. Edwards could be arrested.

92.     Upon information and belief, the Nassau County District Attorneys' Office also contacted Wilson, who conveyed similar information to them, namely that she did not, in fact, know that Mr. Edwards was the person behind the allegations contained in her purported statement

and that Defendant Thomas had drafted the allegations and had her sign it so that Mr. Edwards could be arrested.

93.     The Nassau County District Attorney's Office offered Mr. Edwards a choice: continue to appear at court until such time as he went to trial and disproved the allegations against him, or accept an adjournment in contemplation of dismissal ("ACD") on the stalking charge.

94.     Mr. Edwards accepted the ACD on August 1, 2018, and, upon information and belief, the charge of aggravated harassment in the second degree was dismissed.

95.     On January 31, 2019, Mr. Edwards was made to appear at the Nassau County District Court, at which time the charges were dismissed and sealed.

96.     Mr. Edwards suffered damage as a result of Defendants' actions.  Mr. Edwards was, *inter alia*, deprived of liberty and suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

<u>FIRST CAUSE OF ACTION</u>
*Unlawful Stop and Search*

97.     Mr. Edwards repeats and re-alleges each and every allegation as if fully set forth herein.

98.     The individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Edwards without reasonable suspicion.

99.     As a direct and proximate result of this unlawful conduct, Mr. Edwards sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*False Arrest*

100.    Mr. Edwards repeats and re-alleges each and every allegation as if fully set forth herein.

101.    The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Edwards without probable cause.

102.    As a direct and proximate result of this unlawful conduct, Mr. Edwards sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
*Fabrication of Evidence*

103.    Mr. Edwards repeats and re-alleges each and every allegation as if fully set forth herein.

104.    The individual defendants created false evidence against Mr. Edwards.

105.    The individual defendants forwarded false evidence to prosecutors in the Nassau County District Attorney's Office.

106.    In creating false evidence against Mr. Edwards, and in forwarding false evidence to prosecutors, the individual defendants violated Mr. Edwards' right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

107.    As a direct and proximate result of this unlawful conduct, Mr. Edwards sustained the damages alleged herein.

## FOURTH CAUSE OF ACTION
### *Malicious Prosecution*

108.   Mr. Edwards repeats and re-alleges each and every allegation as if fully set forth herein.

109.   The individual defendants initiated the criminal proceedings on a charge of aggravated harassment in the second degree against Mr. Edwards by issuing and/or causing to be issued legal process against Mr. Edwards.

110.   The individual defendants lacked probable cause to commence the criminal proceeding against Mr. Edwards.

111.   The individual defendants' actions were motivated by actual malice.

112.   The criminal proceeding related to the charge of aggravated harassment in the second degree was terminated in favor of Mr. Edwards.

113.   As a direct and proximate result of this unlawful conduct, Mr. Edwards sustained the damages alleged herein.

## FIFTH CAUSE OF ACTION
### *Failure to Intervene*

114.   Mr. Edwards repeats and re-alleges each and every allegation as if fully set forth herein.

115.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

116.   Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

117.     As a direct and proximate result of this unlawful conduct, Mr. Edwards sustained the damages alleged herein.

<u>SIXTH CAUSE OF ACTION</u>
*Conspiracy under 42 U.S.C. § 1983*

118.     Mr. Edwards repeats and re-alleges each and every allegation as if fully set forth herein.

119.     The individual defendants jointly participated in the deprivation of Mr. Edwards' constitutional rights as set forth herein.

120.     The individual defendants conspired in the deprivation of Edwards' constitutional rights by, among other things, collectively lying about Mr. Edwards' actions and conduct, fabricating witness/victim statements, and intentionally withholding and/or destroying exculpatory evidence in order to support the individual defendants' fabricated version of the events.

121.     The individual defendants did not act to implement an official policy.

122.     As a result of the individual defendants' malicious efforts to damage Mr. Edwards, Mr. Edwards' liberty was restricted, and Mr. Edwards was restrained, subjected to handcuffing, and, among other things, falsely arrested, searched, and prosecuted.

123.     As a direct and proximate result of this unlawful conduct, Mr. Edwards sustained the damages alleged herein.

124.    Mr. Edwards repeats and realleges each and every allegation as if fully set forth herein.

125.    This is not an isolated incident.  Defendant Nassau County, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Edwards.

126.    Defendant Nassau County, through the NCPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

127.    Defendant Nassau County, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

128.    Defendant Nassau County, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

129.    For example, in August 2014, Defendant Gomez was caught beating motorist Kyle Howell, along with another member of the Nassau County Police Department.

130.    Defendant Gomez was also sued in the matter *Cipley v. County of Nassau*, 20 CV 975 (JMA) (ST) (E.D.N.Y.) for numerous violations of law including false arrest and excessive force against Donna Cipley.

131.     Defendant Bernhardt has been sued for various civil rights violations in the matters *Cole v. Bruno*, 11 CV 5948 (AKT) (E.D.N.Y.) and *Wonsigl v. Bernhardt*, 18 CV 1841 (GRB) (SIL) (E.D.N.Y.).

132.     Defendant O'Connor has been sued for various civil rights violations in the matter *Hoppe v. County of Nassau*, 94 CV 828 (FB) (VVP) (E.D.N.Y.).

133.     These policies, practices, and customs were the moving force behind Mr. Edwards' injuries.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mr. Edwards respectfully requests judgment against Defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally;

(b)     Punitive damages against the individual defendants, jointly and severally;

(c)     Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 29, 2021

By:     /s/
        Gregory Paul Mouton Jr., Esq.
        Law Office of Gregory P. Mouton, Jr., LLC
        *Attorneys for Plaintiff Tamon Edwards*
        1441 Broadway, 6th Floor
        New York, NY  10018
        Phone & Fax: (646) 706-7481

21 CV 1670

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TAMON EDWARDS,

Plaintiff,

-against-

COUNTY OF NASSAU, GREGORY BERNHARDT, BASIL GOMEZ, MICHAEL
MAZZARA,DAVID O'CONNOR, and MICHELLE THOMAS,

Defendants.

---

COMPLAINT

---

LAW OFFICE OF GREGORY P. MOUTON, JR., LLC

1441 Broadway, 6th Floor
New York, NY  10018
Phone & Fax: (646) 706-7481